This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Defendant-Appellant William C. Sherrard has appealed from a decision of the Lorain County Court of Common Pleas that accepted his plea of guilty on sixteen counts of gross sexual imposition and convicted him of the sexually violent predator specifications that were attached to each count. This Court reverses.
 I.
{¶ 2} On February 16, 2000, the Lorain County Grand Jury indicted Appellant on sixteen counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4), with sexually violent predator specifications attached to each count pursuant to R.C. 2941.148. Appellant initially entered a plea of not guilty to the sixteen counts of gross sexual imposition, but on October 16, 2000, he withdrew the not guilty plea and entered a plea of guilty to each count of gross sexual imposition; he elected to sever the sexually violent predator specifications and proceed to trial on that issue. On December 21, 2000, Appellant filed a motion to withdraw his guilty pleas. The court, after a hearing on the motion was held on May 30, 2001, found Appellant was not entitled to withdraw his guilty pleas.
{¶ 3} A sexually violent predator specification trial and a sentencing hearing were held on March 29, 2002. After the sexually violent predator trial, the court found Appellant guilty of all sixteen sexually violent predator specifications. The trial court then proceeded to sentence Appellant to three years to life imprisonment on counts one through fifteen; and he received four years to life imprisonment on count sixteen.[1] The sentences for counts one through fifteen were ordered to be served concurrently, but the sentences imposed for counts one through fifteen were to be served consecutively with the sentence issued for count sixteen.[2] Appellant has appealed, asserting three assignments of error, some of which we have rearranged to facilitate review.
 II. Assignment of Error Number Two
{¶ 4} "THE TRIAL COURT ERRED IN ACCEPTING [APPELLANT'S] PLEA OF GUILTY AS IT WAS NOT ENTERED KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY."
{¶ 5} In Appellant's second assignment of error, he has argued that his guilty plea was not entered knowingly, intelligently, and voluntarily. More specifically, he has argued that the trial court failed to comply with Crim.R. 11(C)(2)(a). Appellant has argued that "the record does not indicate that [Appellant had] the requisite understanding of the maximum penalty involved in this matter as well as the fact that prison was mandatory[.]" We agree.
{¶ 6} "It is axiomatic that, because by a guilty plea a defendant waives significant constitutional rights, the plea must be `a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" State v. Sims (May 24, 1995), 9th Dist. Nos. 16841, 16936, at 3, appeal not allowed (1995), 74 Ohio St.3d 1404, quoting NorthCarolina v. Alford (1970), 400 U.S. 25, 31, 91 S.Ct. 160,27 L.Ed.2d 162. If defendant enters a plea that has not been knowingly, intelligently, and voluntarily given, then the enforcement of such a plea violates the defendant's right to due process under both the United States Constitution and the Ohio Constitution. State v. Engle (1996),74 Ohio St.3d 525, 527, citing Kercheval v. United States (1927),274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009. Thus, in order to ensure that each plea received by a trial court is knowingly and intelligently made, a trial court must engage in an oral dialogue with the defendant pursuant to Crim.R. 11(C)(2). Engle, 74 Ohio St.3d at 527. During the colloquy, the trial court must inform the defendant that he is waiving the rights enumerated in Crim.R. 11(C)(2), which provides:
{¶ 7} "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
{¶ 8} "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
{¶ 9} "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
{¶ 10} "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
{¶ 11} A trial court must comply with Crim.R. 11(C)(2), but the degree of compliance is dependent upon the type of rights involved, viz., constitutional or non-constitutional rights. Boykin v. Alabama
(1969), 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274. The federal constitutional rights guaranteed by Crim.R. 11(C)(2) are the privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. See Boykin, 395 U.S. 238 at 243; see, also,State v. Stewart (1977), 51 Ohio St.2d 86, 88-89. When constitutional rights are involved, a trial court must engage in a meaningful dialogue that fully explains the rights being waived "in a manner reasonably intelligible to [the] defendant." State v. Ballard (1981),66 Ohio St.2d 473, paragraph two of the syllabus.
{¶ 12} If non-constitutional rights are at issue, the trial court need only substantially comply with the non-constitutional requirements of Crim.R. 11(C)(2). State v. Wheeland, 9th Dist. No. 21000, 2002-Ohio-6292, at ¶ 9, citing State v. Nero (1990),56 Ohio St.3d 106, 108. Under this less stringent standard, "the trial court's acceptance of a guilty plea will be affirmed so long as the court substantially complied with the requirements of Crim.R. 11(C)(2) and the defendant subjectively understood the implication of his plea and the nature of the non-constitutional rights he was waiving." State v.Brooks (Mar. 1, 1995), 9th Dist. No. 16855, at 4, citing Nero,56 Ohio St.3d at 108. In addition to subjectively understanding the implications of his plea and the rights waived, the Ohio Supreme Court has also held that "a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. The test is whether the plea would have otherwise been made." (Citations omitted.) Nero, 56 Ohio St.3d at 108; see, also,Stewart, 51 Ohio St.3d at 93 (concluding that a defendant failed to show prejudicial error where the trial court substantially complied with the non-constitutional aspects of Crim.R. 11(C)).
{¶ 13} This Court notes that Appellant has claimed that the trial court failed to inform him of the potential maximum sentence and that he was subject to mandatory prison time. These issues are non-constitutional matters. Stewart supra, at 93, citing Kelleher v. Henderson (C.A.2, 1976), 531 F.2d 78. Therefore, in reviewing Appellant's challenge, we need only determine whether the trial court substantially complied with Crim.R. 11(C) before it accepted Appellant's guilty pleas.
{¶ 14} In the instant matter, the maximum penalty Appellant faced for each count of gross sexual imposition, a felony in the third degree, was five years imprisonment. However, because a sexually violent predator specification was attached to each count, Appellant actually faced a maximum term of life imprisonment on each count pursuant to R.C.2971.03(A), which provides:
{¶ 15} "(A) Notwithstanding [R.C. 2929.14(A), (B), (C), and (F)], [R.C. 2929.02], [R.C. 2929.03], [R.C. 2929.06], [R.C. 2929.13], or another section of the Revised Code, other than [R.C. 2929.14(D) and (E)] *** the court shall impose a sentence upon a person who is convicted of or pleads guilty to a sexually violent offense and who also is convicted of or pleads guilty to a sexually violent predator specification that was included in the indictment *** as follows:
{¶ 16} "***
{¶ 17} "(3) Except as otherwise provided in [R.C. 2971.03(A)(4)], if the offense is an offense other than aggravated murder, murder, or an offense for which a term of life imprisonment may be imposed, it shall impose an indefinite prison term consisting of a minimum term fixed by the court from among the range of terms available as a definite term of the offense, but not less than two years, and amaximum term of life imprisonment." (Emphasis added.)
{¶ 18} Attached specifications obviously have the effect of potentially enhancing a defendant's sentence. Because specifications have this effect, this Court must add an additional step in analyzing whether Appellant's plea was knowingly, intelligently, and voluntarily given. That is, this Court must determine whether the trial court was required to inform Appellant that he could receive a maximum sentence of life imprisonment, despite the fact that Appellant did not plead guilty to the sexually violent predator specifications.
{¶ 19} It is true that at the time of the plea hearing a term of life imprisonment would only apply in the event that Appellant was later convicted of the sexually violent predator specifications. And it is also true that Appellant requested that the trial court sever the specifications from the sixteen counts of gross sexual imposition for which he pleaded guilty. Based on this, Appellee has argued: "As [Appellant] was not entering pleas of guilty to the specifications, the trial court was not required to advise Appellant that he could be sentenced to life in prison on the specifications." Appellee's argument is in accord with the position taken by the Eighth District Court of Appeals, which has held "that maximum penalty [as the term is used in Crim.R. 11(C)(2)(a)] refers to the charge to which the defendant ispleading guilty or no contest." (Emphasis sic.) State v. Ball (July 17, 1997), 8th Dist. No. 71036, 1997 Ohio App. LEXIS 3066, at *8, appeal not allowed (1997), 80 Ohio St.3d 1446 (concluding that a trial court is not required to inform a defendant, who is currently on parole, of both the maximum sentence for the charge to which he is pleading guilty and/or no contest and a potential sentence for a parole violation which could run consecutively to his current sentence). We find, however, that Appellee's argument, and the Eighth District Court of Appeals' definition of "maximum penalty," is inapplicable when the crime to which a defendant is pleading guilty also has a sexually violent predator specification attached. This conclusion is based upon the nature of sexually violent predator specifications.
{¶ 20} A sexually violent predator specification potentially enhances the prison term of the underlying offense to which the specification is attached. Because a sexually violent predator specification has the effect of potentially enhancing a prison term, the state must prove each element beyond a reasonable doubt. State v. Ward
(1999), 130 Ohio App.3d 551, 567. That is, the state must prove beyond a reasonable doubt that (1) the offender committed a violent sexual offense and (2) the offender is likely to engage in the future in one or more sexually violent offenses. R.C. 2971.01(H)(1). If the trial court finds a defendant guilty of a sexually violent predator specification, an offender's sentence can be enhanced to include life without parole, to indefinite sentences including not less than two years, and a maximum term of life imprisonment. See 2971.03(A)(1)-(4). Further, an offender may become ineligible for parole or judicial release. See R.C.2971.03(C)(1) and R.C. 2967.13(G).
{¶ 21} As indicated above, an essential element of a sexually violent predator specification is a conviction for the underlying sexually violent offense to which the specification is attached. A person who has not been convicted of, or pleaded guilty to, a sexually violent offense to which a sexually violent predator specification has attached cannot later be found guilty of the specification. State v. Jones
(2001), 93 Ohio St.3d 391, 393. On the other hand, a defendant charged with a sexually violent offense, which has a sexually violent predator specification attached, and who is later convicted of or pleads guilty to the underlying sexually violent offense, must necessarily go to trial on the sexually violent predator specification.[3] See Jones,93 Ohio St.3d at 393 (stating that a conviction of the underlying sexually violent offense triggers the proceeding to determine if a defendant is guilty of the attached specification). It is apparent that the relationship between a sexually violent predator specification and the underlying sexually violent offense is interdependent, thus distinguishing this case from State v. Ball; without a conviction of the underlying offense, a defendant cannot be found guilty of the specification.
{¶ 22} The possibility that a penalty will be enhanced because of an attached sexually violent predator specification is always present. For this reason, we believe that a sexually violent predator specification cannot be ignored during a plea hearing on the underlying charge; the trial court should treat the specification as part of the charge to which the defendant is pleading guilty, even though the defendant has chosen to proceed to trial on the specification. A trial court should include in the definition of "maximum penalty" the amount of time a sexually violent predator specification may enhance a prison term, even though the defendant has not yet been convicted of or pleaded guilty to the sexually violent predator specification. Compare to Statev. Williams (1989), 65 Ohio App.3d 70,
{¶ 23} In the case sub judice, the sexually violent predator specification enhanced Appellant's prison term; the maximum amount of time Appellant could have spent in prison on a single count of gross sexual imposition increased from five years to life imprisonment. The record reveals that the trial court did not inform Appellant of the potential maximum penalty of life imprisonment. During the plea hearing, the trial court asked Appellant: "Do you understand the maximum penalty this Court could impose with just one of [the sixteen counts of gross sexual imposition] is as much as five years in prison?" Appellant replied: "Yeah." In addition, the plea sheet, signed by Appellant, also stated that the maximum penalty for each charge of gross sexual imposition was only five years imprisonment, with a ten thousand dollar fine. The record is devoid of any indication that Appellant was aware that he could receive a term of life imprisonment on each count for which he pleaded guilty.
{¶ 24} As to Appellant's argument that the trial court failed to inform him that prison was mandatory, we apply the same analysis that we applied when we discussed the potential maximum sentence Appellant could receive as a result of the attached sexually violent predator specification. By itself, a charge of gross sexual imposition does not require a mandatory prison sentence. The attached sexually violent predator specification, however, required mandatory prison time. See R.C.2971.03(A)(3).[4] The trial court did not inform Appellant that prison was mandatory, and the plea sheet signed by Appellant also stated that a prison term was not mandatory or necessary. When Appellant pleaded guilty to the sixteen counts of gross sexual imposition, the record reveals that Appellant could not have known that he could potentially be required to remain in prison for a minimum of two years. The trial court should have informed Appellant of the two years mandatory prison time that he could receive if he pleaded guilty to the sixteen counts of gross sexual imposition, and was later convicted of the sexually violent predator specifications.
{¶ 25} Although we conclude that the trial court should have informed Appellant that he could receive a maximum of life imprisonment and mandatory prison time as a result of the attached sexually violent predator specifications, we cannot automatically conclude that such an omission constitutes prejudicial error. See Stewart, 51 Ohio St.2d at 93
(holding that a trial court's failure to inform defendant of one of the non-constitutional rights would not per se constitute prejudicial error).[5] If the record indicates that Appellant reasonably understood the consequences of his plea, then there is no prejudicial error.Ballard, 66 Ohio St.2d at 475, citing to Stewart. After reviewing the record, however, this Court finds that Appellant did not subjectively understand the implications of his plea and the rights that he was waiving because the trial court failed to provide him with the correct information. See State v. Carter (1979), 60 Ohio St.2d 34, 38, certiorari denied (1980), 445 U.S. 953, 100 S.Ct. 1605, 63 L.Ed.2d 789 (stating that there is no easy or exact way to determine what someone subjectively understands, however, "[i]f the defendant receives the proper information, then [a court] can ordinarily assume that he understands that information.") This Court cannot presume that Appellant understood the rights he was waiving from a silent record; the record clearly indicates, and the state agrees, that Appellant was not_told that he could receive life imprisonment and two years mandatory prison time. SeeTwinsburg v. Corporate Security, Inc. (Feb. 21, 1996), 9th Dist. No. 17265, at 14 ("A voluntary, knowing, and intelligent plea cannot be presumed from a silent record.") Because we find that Appellant could not subjectively understand the rights he was waiving, we conclude that the trial court did not substantially comply with Crim.R. 11.
{¶ 26} Furthermore, we find that Appellant was prejudiced by the trial court's failure to inform him that he would receive mandatory prison term of two years and that he could receive life imprisonment on each count charged in the indictment. Although the plea sheet signed by Appellant contained the scribbled notation "MAX 80 yrs," we believe that, but for the trial court's failure to inform Appellant that he could receive life imprisonment on each count and that some prison time was mandatory, the record reflects that Appellant might not have pleaded guilty to the sixteen counts as charged in the indictment. That is, there is no evidence in the record that indicates a guilty plea was a "wiser course to follow." Stewart, 51 Ohio St.2d at 93. Appellant did not enter into a plea agreement, by which all parties agreed that some of the counts of gross sexual imposition would have been dismissed or nolled in exchange for a guilty plea. See State v. Duiguid (Jan. 25, 1990), 8th Dist. No. 56359, 1990 Ohio App. LEXIS 175, at *7 ("One factor to consider in determining whether a defendant's plea of guilty in a felony case was made voluntarily, knowingly, and intelligently was whether other counts of the indictment were nolled, thereby indicating that [the] defendant was motivated by a desire to avoid a more severe penalty.") If such an agreement did exist, then this Court would be more inclined to believe that Appellant would have pleaded guilty even if he had known that he faced a potential life sentence on each count.
{¶ 27} We find the fact that the plea sheet stated that Appellant faced a maximum of eighty years imprisonment does not necessarily indicate that he understood he would receive such a sentence. "Where the possibility of incarceration exists, the rights relinquished by a guilty plea are so important that written statements will not satisfy the requirement of a knowing and intelligent waiver." State v. Bowling
(Mar. 10, 1987), 2nd Dist. No. 9925, 1987 Ohio App. LEXIS 6103, at *9; see, also, State v. Caudill (1976), 48 Ohio St.2d 342, paragraph three of the syllabus ("The requirements of Crim. R. 11(C)(2) are not satisfied by a written statement by the defendant or by representations of his counsel."). Moreover, a scribbled notation, placed haphazardly in the plea sheet, is simply not enough evidence to demonstrate that Appellant should have known that he could receive a sentence that, for him, was equivalent to life imprisonment.
{¶ 28} Also, the fact that Appellant did not explicitly state that he would not have pleaded guilty if he had been informed of the potential life sentence does not alter our decision. We believe that such a statement is not mandatory in light of the fact that a party claiming that his plea was not voluntarily, knowingly, and intelligently made is essentially arguing that he was not given the requisite information and, as a result of the deficiency in such information, he would not have pleaded guilty. Consequently, this Court sustains Appellant's second assignment of error.
 Assignment of Error Number Three
{¶ 29} "APPELLANT'S CONVICTION OF THE SEXUALLY VIOLENT PREDATOR SPECIFICATIONS WAS NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE THAT APPELLANT IS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY VIOLENT OFFENSES."
{¶ 30} In Appellant's third assignment of error, he has argued that the trial court did not have sufficient evidence before it to find Appellant guilty of the sexually violent predator specifications.
{¶ 31} In order to be convicted of a sexually violent predator specification, a defendant must, among other things, be convicted of the underlying sexually violent offense. See R.C. 2971.01(H)(1). However, because we concluded in our discussion in assignment of error number two that Appellant's guilty pleas to sixteen counts of gross sexual imposition were not knowingly, intelligently, and voluntarily given, Appellant could not have been convicted of the underlying sexually violent offenses. As such, Appellant did not satisfy an essential element of each sexually violent predator specification. Therefore, we must vacate Appellant's sexually violent predator specification convictions.
 Assignment of Error Number One
{¶ 32} "IT WAS PREJUDICIAL ERROR AND ABUSE OF DISCRETION FOR THE TRIAL COURT TO DENY [APPELLANT'S] MOTION TO WITHDRAW HIS GUILTY PLEA BEFORE SENTENCING."
{¶ 33} In light of our disposition of Appellant's second assignment of error, his first assignment of error has been rendered moot. Therefore, we decline to address it. See App.R. 12(A)(1)(c).
 III.
{¶ 34} Appellant's second and third assignments of error are sustained; his first assignment of error is moot. The decision of the trial court is reversed and the cause remanded for further proceedings consistent with this opinion.
BAIRD, P.J. CONCURS
[1] Counts one through fifteen involved sexual conduct with E.P., who was five years old at the time of the incident for which Appellant was arrested. Count sixteen involved E.P.'s younger brother, J.P., who was approximately three years old when Appellant engaged in sexual conduct with the child.
[2] The sentences in counts one through sixteen in Case No. 00CR055195 were also ordered to be served consecutively with the sentence issued in Case No. 96CR048897. In Case No. 96CR048897, Appellant was convicted in 1997 for attempted rape and felonious sexual penetration of the mother of his then-infant son. He was sentenced to three to fifteen years imprisonment on each count, to be served concurrently. The sentence was suspended and he was granted five years probation; Appellant was on probation from this conviction at the time of the current offenses.
[3] Pursuant to R.C. 2971.02, the jury or the court must decide whether a defendant is guilty of a sexually violent predator specification in a proceeding separate from the trial on the underlying sexually violent offense.
[4] R.C. 2971.03(A)(3) provides that "if the offense is an offense other than aggravated murder, murder, or an offense for which a term of life imprisonment may be imposed, [the court] shall impose an indefinite prison term consisting of a minimum term fixed by the court from among the range of terms available as a definite term for the offense, but not lessthan two years[.]" (Emphasis added.) The prison time imposed by R.C.2971.03 constitutes "mandatory prison time," as the term is defined in R.C. 2929.01(Y)(3), which states that "mandatory prison time" includes "the term in prison imposed pursuant to [R.C. 2971.03.]"
[5] Compare with State v. Durham (Apr. 27, 2000), 4th Dist. No. 99CA09, 2000 Ohio App. LEXIS 1952, at *4 ("In general, the failure of a trial court to properly inform a defendant of the maximum penalty applicable to his offense is reversible error.").